LEWIS & LLEWELLYN LLP
Paul T. Llewellyn (Bar No. 216887)
pllewellyn@lewisllewellyn.com
Evangeline A.Z. Burbidge (Bar No. 266966)
eburbidge@lewisllewellyn.com
Kenneth M. Walczak (Bar No. 247389)
kwalczak@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

Attorneys for Plaintiffs
KEVIN BERGER, R. BERGER &
ASSOCIATES INC., and KBCH
CONSULTANTS INC.

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BERGER, an individual, R. BERGER & ASSOCIATES INC., a California corporation, and KBCH CONSULTANTS INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID HERNANDEZ, an individual, and DOES 1-10 <br><br> Defendants. | Case No. <br><br> **COMPLAINT** |

1

COMPLAINT
CASE NO.

Plaintiffs Kevin Berger ("Berger"), R. Berger & Associates Inc. ("RBA"), and KBCH Consultants Inc. ("KBCH"), complain and allege against Defendants David Hernandez ("Hernandez") and Does 1-10 as follows:

**<u>INTRODUCTION</u>**

1. Berger is a businessman and certified public accountant ("CPA").

2. For the past decade, he and Hernandez have had several successful business partnerships.

3. However, over the past two years, the relationship between Berger and Hernandez began breaking down. Hernandez began acting increasingly erratic, spending money on lavish vacations, parties, expensive cars, watches, and five-star restaurants—and discussing his exploits with his own employees.

4. This erratic behavior came to a head one weekend in 2024, when Hernandez executed an illegal takeover of Colonize Media, Inc. ("Colonize Media, Inc." or "CMI"), a company he and Berger formed, owned 50/50, and had worked on together for nearly a decade. Hernandez removed Berger and all key employees' access from Colonize Media, Inc.'s systems, changed passwords, locked out key employees, made it impossible for others to carry out their job responsibilities or communicate with clients, and redirected deposits to a bank account he created that was under his sole control. Colonize Media, Inc.'s monthly revenues from its contracts with digital music platforms were approximately $2 million and, on information and belief, Hernandez directed those deposits to the account he created. Hernandez's takeover of Colonize Media, Inc.'s operations and financial systems resulted in emergency legal action by Berger and the appointment of a Receiver by the court. The impact of Hernandez's actions is currently being litigated between the parties in Stanislaus County Superior Court.

5. Hernandez's grudge and irrational conduct did not end with the attempted and improper takeover of Colonize Media, Inc. In subsequent months, Hernandez and those working at his direction systematically targeted *other* companies owned by Berger with hacking and attempted hacking.

6. Since the takeover in 2024, Hernandez has continued to hack into Berger's business

2

COMPLAINT
CASE NO.

accounts, destroying intellectual property and assets owned by Berger.  For example, in or around May and June 2024, Hernandez hacked into Berger's YouTube channels and deleted over one thousand videos.  Hernandez deployed his hallmark hacking techniques—impersonating a Berger employee to attain access to the channels, removing permissions, and blocking access to the channels.

7.    The subject of this action is Hernandez's hacking of and improper access to Berger's Intuit account and QuickBooks company files.  In August 2025, Hernandez escalated his cybercrimes by infiltrating the Intuit account of Berger's separately owned company, RBA—a back-office support and management services firm—and accessing Berger's QuickBooks company files, including those of RBA and KBCH, a third-party proposition player services provider.  During this hacking, the perpetrator(s) changed login information, changed the account ownership information, changed the associated phone number, and accessed hundreds of confidential financial transactions.  Only with the assistance of technical experts, legal counsel, and QuickBooks were the Plaintiffs able to regain control over their accounts.

8.    During the recovery process, Erin Bishop, an RBA employee, participated in a call with a member of QuickBooks Customer Account Protection Team.  Bishop asked whether the individual accessing the QuickBooks account was David Hernandez.  The QuickBooks employee told her that he could not say for security reasons, but that she had "good instincts."

9.    The hacking of the Intuit account and QuickBooks company files fits within the pattern established by Hernandez over the past year, and Plaintiffs have a good faith basis to believe, based on his prior actions and QuickBooks' representation, that he is the person behind this most recent breach.

10.    To prevent Hernandez from undertaking additional attacks on Berger's companies, and given the sensitive nature of the financial information accessed, the Plaintiffs filed a complaint with the FBI and now bring this Action.

11.    By repeatedly hacking Plaintiffs' systems and accounts to sabotage Berger's businesses, Hernandez and his associates violated: (1) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*. and (2) the California Comprehensive Computer Data Access and Fraud Act,

COMPLAINT
CASE NO.

Cal. Pen. Code §§ 502 *et seq*. Plaintiffs bring this action to hold Hernandez accountable.

## THE PARTIES

12.     Plaintiff Kevin Berger is an individual and a resident of Stanislaus County, California. Berger is a businessman and the sole owner of RBA and the majority owner of KBCH.

13.     Plaintiff RBA is a corporation established and existing under the laws of the State of California. RBA's principal place of business is in Stanislaus County, California. RBA is a back-office support and management services corporation. Berger is the Chief Executive Officer of RBA.

14.     Plaintiff KBCH is a corporation established and existing under the laws of the State of California. KBCH's principal place of business is in Stanislaus County, California. KBCH is a third-party provider of proposition player services. Berger is the Chief Executive Officer of KBCH.

15.     Defendant Hernandez is an individual who, on information and belief, resides in Riverside County, California.

16.     Plaintiffs are presently unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues those parties by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of fictitiously named Defendants when those details are discovered or ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that the injuries as herein alleged were proximately caused by such named and fictitiously-named Defendants.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq*.

18.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state law claim.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because RBA and KBCH's principal places of business are within this district, and a substantial part of the events giving rise to the claims occurred in this district or were targeted towards this district.

4

COMPLAINT
CASE NO.

# FACTUAL ALLEGATIONS

## I.   HERNANDEZ'S HISTORY OF HACKING.

20.   Before the August 2025 incident, Hernandez repeatedly and systematically worked to gain improper access to Berger's accounts.  Several of these incidents are detailed below.

### A.   The Sabotaging of Colonize Media, Inc.

21.   In 2014, Berger and Hernandez founded Colonize Media, Inc., a music distribution and licensing company.  The company, currently being run by a court-appointed Receiver, distributes music and audiovisual assets through digital service provides ("DSPs") like YouTube, Apple, and Spotify, and pays royalties to the artists.

22.   While Berger and Hernandez had a long history of working well together, the relationship began falling apart following Hernandez's increasingly erratic behavior, including becoming belligerently drunk and intimidating employees.

23.   Beginning in late 2022, Berger wanted to retire from Colonize Media, Inc. and began discussions with Hernandez to sell the company.  All was going well until, in May 2024 with a sale on the horizon, Hernandez executed a hostile takeover of Colonize Media, Inc.'s assets.

24.   During this hostile takeover, Hernandez hijacked Colonize Media, Inc.'s entire computer infrastructure.  One of his targets was Colonize Media, Inc.'s Google Workspace Account, which is a cloud-based service that allows Colonize Media, Inc. to manage its relationships with many of its business partners, including digital music platforms.

25.   Hernandez initiated a complete export of all emails and data associated with CMI's Google Workspace Account, including Berger's.  This data contained a large volume of personal information and banking information of CMI employees and clients.

COMPLAINT
CASE NO.

From: Google Workspace Alerts <google-workspace-alerts-noreply@google.com>
Sent: Tuesday, March 19, 2024 7:34 PM
To: kevin@colonizemedia.com
Subject: Alert: Domain data export initiated by davidh@colonizemedia.com

This Domain data export initiated alert is to inform you that a super administrator for your Google account has started exporting data from your domain.

The alert details include:

- Summary: davidh@colonizemedia.com has started exporting data from this domain.
- Activity date: Wednesday, Mar 20, 2024, 2:33:35 AM (UTC)
- Actor: davidh@colonizemedia.com
- Severity: HIGH

Please view the alert center for additional details, investigation options, and remediation recommendations.

Go to Alert Center

You have received this important update about your Google Workspace account because you are the designated admin recipient for this alert type. You can turn off these alerts or change the email recipients in the System defined rules section of the Admin Console.

Google LLC 1600 Amphitheatre Parkway Mountain View, CA 94043

26.     During this same time frame, on or around April and May 2024, Hernandez designated himself as sole super-administrator of CMI's Google Workspace Account, without Berger's knowledge or consent, thereby terminating access for Berger and all employees and outside consultants authorized to work on CMI's stable of music rights and talent.  CMI employees received notifications that the account's permissions had been changed.  In an email sent on May 24, 2024, Hernandez stated that effective immediately all deposits received from online platforms will be placed in a new corporate operating account and all invoices should be sent to him for review.

27.     Hernandez locked Berger and various CMI employees out of key computer systems, including the email addresses used for CMI accounting, legal, and development.  He also directed deposits to a bank account he created that was under his sole control.  Colonize Media, Inc.'s monthly revenues from its contracts with digital music platforms are approximately $2 million and, on information and belief, Hernandez was directing all of Colonize Media, Inc.'s deposits to the account he created.

28.     As a result of this incident, the court appointed a Receiver to oversee CMI property.  Hernandez was also required to return access to all the CMI employees.  The dispute between Berger and Hernandez as it pertains to the takeover, and a series of allegedly related entities, is currently being litigated in Stanislaus County Superior Court, Case No. CV-24-004371 ("Stanislaus

6

COMPLAINT
CASE NO.

Action").

**B.    Hacking of Berger's YouTube Channels and Deletion of Content.**

29.    Hernandez continued his pattern and practice of attacking Berger's assets. Hernandez's vendetta against Berger led to another target—Berger's YouTube channels and videos. Hernandez employed his hacking techniques to infiltrate two independently-owned YouTube channels.  In one channel, he hacked a Berger employee's email, changed channel ownership so that he was the primary and only owner, removed access for others and set up a two-factor authentication to his personal cell phone.  He proceeded to delete over one thousand videos.

30.    Until on or around late May 2024, only certain individuals employed by Berger had "owner" permissions on channels associated with Berger and his businesses.

31.    But Hernandez changed all that.  On information and belief, in or around May 2024, he improperly obtained access to two YouTube channels owned by Berger, altering the appropriate credentials and deleting over one thousand videos, causing irreparable harm to Berger's businesses and intellectual property.  In total, the videos at the time of deletion had garnered over 20 million views.  Hernandez also changed the name of the channels.

32.    Videos on these two channels were deleted by david@colonizemedia.com and colonizemedia@gmail.com, email addresses Hernandez was known to use.

33.    Again, Hernandez demonstrated the means and the motive for hacking into Berger's property and deleting all that he could.

34.    While some of these videos were recovered, not all were and Hernandez offered vague excuses to others justifying his actions if he said, hypothetically, he had been the one to delete the videos.

**C.    Hacking of Stop Talking Music Group Account.**

35.    Hernandez's actions did not stop there.  In June of 2025, he attempted to improperly access another account solely owned by Berger.

36.    Stop Talking Music Group Ltd. is a company registered in the Republic of Cyprus and previously known as Colonize Media Europe Ltd.  It is in the business of acquiring the rights to distribute audio visual assets in Europe.  While Hernandez claims in the Stanislaus Action that he is

7

entitled to partial ownership in this company, he has no current ownership or access to the company's dashboard.

37.     However, on or around June 11, 2025 at 2:37:56 a.m. BST, an employee of Kevin Berger's, Matthew Davis, received a notification someone had attempted to hack into his Stop Music Group email account using an old email of his (see screenshot below recording hacking attempt below with IP address highlighted).



38.     Frontier Communications, the broadband internet provider associated with the IP address flagged, confirmed that Hernandez was the subscriber directly linked with the IP address used on June 11, 2025.  Hernandez's email address was listed as the subscriber contact information.

COMPLAINT
CASE NO.

IP Address:  47.149.74.72

Session Start: 2025-05-01 19:35:31 GMT
Session End: Still Active

| | |
|---|---|
| Customer Name: | Colonize Media Inc. |
| Account Address: | 41923 2nd Ave Ste 300<br>Temecula, CA |
| Billing Address: | 41923 2nd Ave Ste 302<br>Temecula, CA  92590-2836 |
| Billing Number: | |
| Contact Telephone: | 415-735-8326 |
| Email Address: | david@colonizemedia.com |

39.     Davis never gave Hernandez permission to access his Stop Music Group email account.  His improper attempt to break into the Stop Talking Music Ltd. account pulled directly from his prior playbook at Colonize Media, Inc. and the YouTube hacking.  It resulted in tens of thousands of dollars in legal and forensic costs.

40.     These incidents, which provide only a few examples, demonstrate Hernandez's ability to hack into computer systems, his desire to do so, and his ongoing animus toward Berger. All of these facts give Plaintiffs a good faith basis to believe that Hernandez and/or people acting at his direction are behind the August 2025 hacking into the RBA's Intuit account and Berger's QuickBooks company files.

**II.     HERNANDEZ HACKS BERGER'S INTUIT ACCOUNT AND QUICKBOOKS FILES AND ACCESSES SENSITIVE PAYROLL AND FINANCIAL INFORMATION.**

41.     In summer 2025, on information and belief, Hernandez's illegal hacking techniques—which had been honed over the past year, since the 2024 Colonize Media, Inc. attack— found another target: RBA's Intuit account and the QuickBooks company files used to manage several Berger businesses, including KBCH.

42.     An Intuit account is a single login used to access Intuit products like QuickBooks. QuickBooks is the specific accounting software that can be accessed through the Intuit account. QuickBooks provides tools for invoicing, expense tracking, payroll, and financial reporting.

9

COMPLAINT
CASE NO.

Rightworks is a company that provides cloud hosting for QuickBooks Desktop, allowing secure remote access to QuickBooks and other business applications like Microsoft Office.

43. Berger is the Chief Executive Officer of RBA. RBA owns an Intuit account that is used to access Berger's QuickBooks company files. Erin Bishop, an RBA employee, is the primary administrator of RBA's Intuit account. Berger's QuickBooks company files contain highly sensitive payroll and financial information related to Berger, his employees, and affiliated companies. Specifically, the QuickBooks company files contain personal information regarding thirty to forty employees, tax forms with company information and personal identifying information, sensitive financial information, and customer and vendor information.

44. Bishop was the primary administrator of the Intuit account with access to the QuickBooks files. Only two other employees had access to QuickBooks company files via Rightworks. To be clear: Hernandez **never** had any involvement, let alone administrative control of RBA's Intuit account and was **never** granted ownership or any permissions for the account or any QuickBooks company files. Indeed, he was not and has not been affiliated with RBA, KBCH, the Intuit account, or the QuickBooks files in any way.

45. On information and belief, Hernandez and/or others at his direction used the email address of RBA employee Bishop to impersonate her, gain control of the Intuit account, and hack into his companies' QuickBooks files.

46. On or around August 5, 2025 at 8:22 a.m., Bishop received an alarming alert regarding unauthorized activity related to her Intuit email: erin@kbergergroup.com. Bishop was informed by accountant Sally Paulson, that at or around 7:00 a.m. on August 5, another accounting employee received a suspicious email from Intuit requesting access to KBCH's highly sensitive payroll file. The request appeared to come from ***Bishop***'s Intuit account email. This struck Paulson as suspicious, so she reached out to Bishop. And, indeed, Bishop confirmed she had never requested such access.

47. Deeply concerned by the unauthorized request to access sensitive payroll information, Bishop immediately checked the Intuit account associated with her email address. As mentioned above, Bishop's account is the primary account owner, which controls licensing, user

COMPLAINT
CASE NO.

administration, and permissions for QuickBooks products under RBA.

48. Bishop discovered that her Intuit profile had been altered with an unauthorized phone number bearing a Southern California area code. The operations for RBA and KBCH are located in Northern California. Hernandez, however, lives in Southern California. Aware of this, and Hernandez's prior hacking attempts including through the use of a VPN that covered his tracks, Bishop dug deeper. She also observed unauthorized active sessions from Andover, Massachusetts on August 4 and 5.

49. Wanting to protect the sensitive financial information as quickly as possible, Bishop terminated those sessions, enabled two-factor authentication, and contacted Intuit support.

50. During this same time frame, in August 2025, Bishop also received a suspicious email informing her that someone had requested a Realm ownership change for her Intuit account. A Realm ownership change refers to transferring the primary administrator role or primary contact of an Intuit account.

51. Around the same time, Rightworks, which hosts QuickBooks company files on remote servers, was also compromised. Bishop's Rightworks login email (the same email used for the Intuit account) provides primary account owner access, giving administrative control over hosted QuickBooks files. Rightworks records show unauthorized logins from unfamiliar IP addresses on August 1, 4, and 5, 2025. These logins were used to access company QuickBooks files, during which master administrator passwords were completely reset without authorization. Following a forensic investigation, it appears that the IP addresses were routed through foreign VPNs, making them difficult to trace. Hernandez was known to use foreign VPNs in prior hacking attempts.

52. Bishop also discovered that passwords were reset, without authorization, in at least six QuickBooks company files, including RBA and KBCH's files.

53. Bishop also noticed unauthorized alterations to the QuickBooks general ledger for Stop Talking Music Group Ltd. Two chartered accounts were added to the company's QuickBooks file. A transaction was added to Stop Talking Music Group Ltd.'s general ledger in the amount of $2,557.34. The memo line denoted a "funds transfer" that Bishop did not authorize. Suspiciously,

this amount ($2,557.34) was discussed with the Receiver in the Stanislaus Action,[1] indicating that Hernandez or his associates had knowledge of this balance and was the one who made these alterations to the general ledger.

54.    Indeed, during the recovery process, Bishop participated in a call with a member of QuickBooks Customer Account Protection Team.  Bishop asked whether the individual accessing the QuickBooks account was "David Hernandez."  The QuickBooks employee told her that he could not say for security reasons, but that she had "good instincts."

55.    Bishop's Microsoft email account was also compromised as part of this incident.

56.    A forensic investigator examined Bishop's PC and found it clean, confirming that the comprise occurred at the hosted-account level, not from malware on her workstation.

57.    The alarming impersonation of Bishop's email address, the alteration of account profile information, manipulations of account permissions and control, and unauthorized access of account information all followed a similar pattern demonstrated in Hernandez's takeover of another company, Colonize Media, Inc., in 2024.

58.    On information and belief, these actions provided Hernandez and/or those acting at his direction with access to confidential company financial data, affecting numerous associated entities and business accounts.

59.    In response to these hacking incidents, Berger and RBA and KBCH employees worked with forensic experts, reset access credentials, enabled multi-factor authentication, and coordinated with Intuit and Rightworks.  The incident was also reported to the FBI. Plaintiffs incurred significant time and expense to investigate, remediate, and secure the compromised accounts and data.

60.    Several individuals were affected by this hacking incident, including Berger, Paulson, Bishop, employees of RBA and KBCH, and affiliated companies.

61.    Hernandez was never an authorized user of RBA's Intuit account, Berger's company QuickBooks files for KBCH, RBA, and other affiliated companies, or the Rightworks and Realm

---

[1] This amount was flagged in an email exchange with the Receiver in October and November 2024.

COMPLAINT
CASE NO.

accounts.

62.    Berger's damages include lost business, costs of investigation and security, and attorneys' fees, all easily exceed the $5,000 statutory minimum.  The full extent of the financial damage is still to be determined.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.)**

63.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

64.    At all relevant times, Plaintiffs' business email servers, Intuit account, QuickBooks, Rightworks, Realm, and Microsoft accounts constitute "computer[s]" and "protected computer[s]" under 18 U.S.C. § 1030(e)(1) and 18 U.S.C. § 1030(e)(2) because they are used in interstate commerce and connected to the Internet.

65.    Defendant knowingly and intentionally accessed Plaintiffs' protected computers without authorization or exceeded any authorization granted by using, among other things, fraudulent credentials, deceptive means, and unauthorized remote connections to obtain information, including personal information regarding thirty to forty employees, tax forms with company information and personal identifying information, sensitive financial information, and customer and vendor information, in violation of 18 U.S.C. § 1030(a)(2)(C).

66.    Defendant knowingly and with intent to defraud Plaintiffs accessed the protected computers without authorization, furthered the intended fraud, and obtained information of value, including but not limited to Plaintiffs' business records and financial information, in violation of 18 U.S.C. § 1030(a)(4).

67.    Defendant knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization by, among other things, altering login credentials and financial information, in violation of 18 U.S.C. § 1030(a)(5)(A).  Defendant further intentionally accessed protected computers without authorization and recklessly caused damage or loss, in violation of 18 U.S.C. § 1030(a)(5)(B)-(C).

13

COMPLAINT
CASE NO.

68. As a direct and proximate result, Plaintiffs suffered "damage" (§ 1030(e)(8)) and "loss" (§ 1030(e)(11)) in excess of $5,000 in a one-year period, including: manipulation of financial information; business interruption and reputational injury; forensic investigation, remediation, and legal costs; and administrative expenses to recover and secure compromised accounts.

**SECOND CLAIM FOR RELIEF**

**Violation of Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, *et seq*.)**

69. Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

70. Defendant knowingly accessed, continues to access, and without permission used and continues to use, Plaintiffs' data, computers, computer systems and/or computer networks in order to devise and/or execute a scheme to defraud and deceive or to wrongfully obtain data in violation of California Penal Code § 502(c)(1).

71. Defendant knowingly accessed and without permission took, copied, and/or used, and continues to take, copy, and/or use, data from Plaintiffs' computers, computer systems and/or computer networks in violation of California Penal Code § 502(c)(2).

72. Defendant knowingly and without permission used or caused to be used Plaintiffs' computer services in violation of California Penal Code § 502(c)(3).

73. Defendant knowingly and without permission damaged, altered, deleted or destroyed Plaintiffs' data, computer software, and/or computer programs in violation of California Penal Code § 502(c)(4).

74. Defendant knowingly accessed and without permission intentionally disrupted and caused the disruption of Plaintiffs' computer services and denied and caused the denial of computer services to Plaintiffs and Plaintiffs' authorized users, in violation of California Penal Code § 502(c)(5).

75. Defendant knowingly and without permission provided or assisted in providing a means of accessing Plaintiffs' computers, computer systems and/or computer networks to allow others to wrongfully obtain, take, copy, or use Plaintiffs' data and without permission to use

14
COMPLAINT
CASE NO.

Plaintiffs' computer services, in violation of California Penal Code § 502(c)(6).

76.   Defendant knowingly and without permission accessed or causes to be accessed Plaintiffs' computer, computer system, and/or computer network, in violation of California Penal Code § 502(c)(7).

77.   Pursuant to California Penal Code § 502(e), Plaintiffs are entitled to compensatory damages, punitive or exemplary damages, attorneys' fees, and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendant Hernandez, and Does 1 through 10 inclusive as follows:

1.   Awarding compensatory damages in an amount to be determined at trial;

2.   Awarding exemplary damages in an amount to be determined at trial;

3.   Awarding interest at the maximum legal rate on all sums awarded;

4.   Awarding reasonable attorneys' fees as permitted by law;

5.   Awarding all costs of suit herein; and

6.   Awarding such other and further relief as the Court deems just and proper.

Dated: October 28, 2025                    LEWIS & LLEWELLYN LLP

By: */s/ Evangeline A.Z. Burbidge*
Paul T. Llewellyn
Evangeline A.Z. Burbidge
Kenneth M. Walczak
Attorneys for Plaintiffs
KEVIN BERGER, R. BERGER &
ASSOCIATES INC., and KBCH
CONSULTANTS INC.

COMPLAINT
CASE NO.